IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Civil Action No.: 5:10-cv-00143

FILED
STATESVILLE, N.C.

APR 1 5 2011

U.S. District Court
Western District of N.C.

| MATT JENKINS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | MEMORANDUM OF LAW IN |
|  | ) | SUPPORT OF MOTION FOR |
| DAVIS & DAVIS ATTORNEYS, | ) | JUDGMENT BY DEFAULT |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

THE PLAINTIFF, Matt Jenkins, hereby submits this Memorandum of Law in Support of his Motion for Judgment by Default against Defendant, Davis & Davis Attorneys.

I.
FACTUAL BACKGROUND

On or about August 1, 2009, the Defendant began placing calls to the Plaintiff's cellular telephone number, 562-882-0300. The calls consisted of recorded messages instructing the Plaintiff to, "Call Davis Davis attorneys at 1-800-988-8282 for an opportunity to resolve an important business matter."

The Plaintiff had never before heard of "Davis Davis" and had no "important business matter" to resolve with them and, for that reason, initially chose not to return the calls. The calls continued to come however, so, on October 12, 2009, Plaintiff called Defendant to inquire as to the purpose of the calls. Upon learning from one of Defendant's collection agents that Defendant's collection division was attempting to collect a debt, on behalf of and allegedly owed to "Merrick Bank," Plaintiff requested that the Defendant send information regarding the alleged debt in writing and cease placing autodialed, prerecorded phone calls to his cellular telephone. The Defendant's collection agent responded by stating that the calls would not stop until the matter was resolved, at which point the call was terminated.

It should be noted here that Plaintiff's independent research discovered the following information regarding Defendant's collection agency business. According to the *Retail Collection Attorney Network* website, Davis Davis operates a collection agency and call center separate and apart from its law practice, supervised and staffed by non-attorney collection agents. http://www.attorneys-network.com/davisdavis-profile.htm. (DDA owns its own 26,000 sq. ft., three-story, building at 393 Vanadium Road, Pittsburgh, PA which includes headquarters office suite and separate state-of-the-art call center.) Plaintiff acknowledges he is aware of North Carolina's so-called *learned profession* exception, which grants exemptions to attorneys who violate North Carolina's collection agency laws. It is the Plaintiff's position however, that this exemption does not extend to attorneys operating a collection agency under the management of a layman. This is consistent with N.C. Gen. Stat. § 58-70-15(c)(8), which provides that such activities, i.e., an attorney operating a collection agency under the management of a laymen is not exempt from collection agency licensing.

Some days later, Plaintiff received in the mail a written communication from Defendant stating in part, "This letter will confirm your agreement with a member of our staff to make payments as follows ... " The letter failed to reference a debt owed to "Merrick Bank" and instead was captioned, "CARDWORKS v. MATT JENKINS," as if the letter was intended to convey the impression that legal action had been commenced against the Plaintiff. It is proper to note here that Plaintiff had never, at any time, agreed to make payments of any kind, and had never before heard of "Cardworks."[1] The letter was not signed by an attorney, nor did it purport to have been generated or reviewed by an attorney. At no time, in fact, during this entire sequence of events, did the Plaintiff ever speak with or receive correspondence from an attorney.

All the while, the Defendant continued to place calls and leave prerecorded messages on Plaintiff's cellular telephone; utilizing the services of its call center

---

[1] Plaintiff subsequently discovered through internet research that Cardworks is a collection agency based in New York.

which, upon information and belief was being operated under the management of a layman.

## II.
## JUDGMENT BY DEFAULT

Rule 12(a)(1)(a) of the Federal Rules of Civil Procedure provides that a Defendant shall serve its answer to a complaint within twenty-one (21) days of service of the latter. The Complaint in this case was filed on September 24, 2010, the Complaint and Notice of a Lawsuit and Request to Waive Service of a Summons was mailed to the Defendant on September 24, 2010. After not receiving a response to the foregoing, the Summons and a Complaint was personally served upon the Defendant, Davis Davis Attorneys, on November 23, 2010. The Summons, issued by the Court on November 15, 2010, and served upon the Defendant together with the Complaint, notified the Defendant of its obligation to file an Answer within twenty-one (21) days from the date of service. Considering the fact that the Defendant is a law firm, licensed to practice in the state of Pennsylvania, it is inconceivable that the Defendant was unaware of its obligations in this regard.

As of the date of this filing, the Defendant had not filed an Answer, had not served an Answer or any other paper upon the Plaintiff, and had not otherwise responded to the summons served upon it. To this date, the Defendant has undertaken no defense whatsoever in this matter.

The Plaintiff recognizes that entry of a default judgment against a Defendant is a severe remedy. *Epicentre Strategic Corp. - Mich. v. Cleveland Constr.*, 2007 U.S. Dist. LEXIS 15971 ( E.D. Mich. Mar. 7, 2007). However, when a party does not respond to a properly served Complaint and ignores a duly issued and properly served Summons, a default judgment is the appropriate recourse. *McNeil v. United States*, 12 Fed. Appx. 805, 807 (10th Cir. Okla. 2001). The Plaintiff would rather have this action decided upon its merit, however, since the Defendant appears to have no interest in participating, the only remaining avenue is the entry of default judgment against the Defendant.

III.
## THE RELIEF SOUGHT BY PLAINTIFF SHOULD BE AWARDED

When the Court determines that a Defendant is in default, the factual allegations of the Complaint are taken as true for all purposes, excluding the determination of damages. *Pentech Fin. Servs. v. Old Dominion Saw Works, Inc.*, 2009 U.S. Dist. LEXIS 55786 (W.D. Va. June 30, 2009). This rule applies whether the relief sought is legal or, as is this case here, *both* legal and equitable. *United States v. Woods*, 2004 U.S. Dist. LEXIS 6399 (D. Minn. Mar. 31, 2004). The Plaintiff offers the following summary of what he believes his evidence would have shown at a trial of this matter.

A. The Telephone Consumer Protection Act (TCPA)

It is unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii).

Between August 1, 2009 and November 30, 2009, the Defendant placed 65 such calls to the Plaintiff. The content of each call consisted solely of the following, prerecorded voice message: "Call Davis Davis attorneys at 1-800-988-8282 for an opportunity to resolve an important business matter." The calls were not placed for an emergency purpose, and the Plaintiff had never given prior express consent (to anyone) to place such calls to his cellular telephone. In fact, when Plaintiff called Defendant on October 12, 2009 to inquire as to the nature of the phone calls and to reiterate the fact that he had never given his consent to receive calls violative of the TCPA, the Defendant's non-attorney customer service representative informed Plaintiff in no uncertain terms that he would continue to receive the autodialed calls and prerecorded messages until he "resolved" the matter. And the Defendant did just that; by continuing to place autodialed calls and to leave prerecorded messages on the Plaintiff's cellular phone until November 30, 2009 when, upon information

and belief, the subject accounts were withdrawn from the Defendant and the calls stopped.

The TCPA provides a private right of action to consumers who receive unlawful calls. *Jenkins v. Allied Interstate, Inc.*, 2009 U.S. Dist. LEXIS 94183 (W.D.N.C. Sept. 25, 2009). And, statutory damages are calculated on a per call basis. *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 630 (6th Cir. Ohio 2009) (The statute allows "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" to bring an action for statutory damages "for each such violation."). And regardless of actual monetary loss, other courts considering this issue have held that the $500 figure, absent the finding of a "willful and knowing" violation, is a mandatory fixed sum. *Fillichio v. M.R.S. Assocs.*, 2010 U.S. Dist. LEXIS 112780 (S.D. Fla. Oct. 19, 2010). For example, where a Defendant places 157 calls, the Plaintiff is entitled to statutory damages in the amount of $78,500 (157 calls multiplied by $500). *Id.* Additionally, the TCPA authorizes treble damages for violative calls placed willfully and knowingly with the use of an ATDS or recorded message player regardless of whether or not the offender knew that they were violating the TCPA. See, e.g., *Sengenberger v. Credit Control Servs.*, 2010 U.S. Dist. LEXIS 142528 (N.D. Ill. June 17, 2010). Here, the Defendant knew it was calling the Plaintiff, knew it was leaving prerecorded messages, and knew or should have known that such conduct is unlawful, especially considering the fact that the Defendant holds itself out as a lawfirm (regardless of the fact the call center is run by a layman).

Because the Defendant willfully and knowingly placed unlawful calls to the Plaintiff's cellular telephone without his prior express consent and without an emergency purpose, as alleged in the complaint, the Plaintiff is entitled to treble damages, especially considering the fact that the Defendant plainly stated that it had no intention of discontinuing the calls, even after being asked to do so.

B. The Fair Debt Collection Practices Act (FDCPA)

The FDCPA is a strict liability statute. *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. N.Y. 1996) (Because the Act imposes strict liability, a consumer need not show

intentional conduct by the debt collector to be entitled to damages). Moreover, a lawyer or law firm that collects debts is subject to the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 292 (U.S. 1995).

It is a violation of 15 U.S.C. § 1692g(a)2 for a debt collector to send collection letters to a consumer which fails to identify the current creditor on the dunning letter. *St. Denis v. New Horizon Credit, Inc.*, 2006 U.S. Dist. LEXIS 47446 (D. Conn. July 12, 2006). Because the Defendant failed to identify the current creditor in its letter, not to mention the fact that it falsely and misleadingly alleged the existence of a payment arrangement, Plaintiff is entitled to damages as provided under 15 U.S.C. § 1692k as a matter of law.

Second, it is a violation of 15 U.S.C. § 1692e (11) if a debt collector fails to include in **all** its communications with a consumer that the communication is from a debt collector. *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1351 (11th Cir. Ga. 2009). Not once in any of its telephone messages to the Plaintiff, did the Defendant include the notice that the communication was from a debt collector. In failing to do so, the Defendant violated 15 U.S.C. § 1692e (11), thereby, again, entitling the Plaintiff to damages as a matter of law.

Finally, it is a violation of 15 U.S.C. § 1692e for a debt collector to use false or misleading representations in attempting to collect a debt from a consumer. *Weinstein v. Fink*, 2001 U.S. Dist. LEXIS 2075 (N.D. Ill. Feb. 21, 2001). The Defendant's false statement that the Plaintiff had agreed to make payment on the account and false inference of a pending action, *Cardworks v. Matt Jenkins*, are both false and misleading, and were intended to intimidate or coerce the Plaintiff into sending money to the Defendant. Accordingly, the Defendant's acts violate 15 U.S.C. § 1692e, further entitling the Plaintiff to damages as a matter of law.

C. The North Carolina Debt Collection Statutes (NCCPA)

As stated earlier, Plaintiff recognizes that an attorney at law is immune from liability for violations of the North Carolina Collection Agency Act, to the extent that he is collecting his own accounts, in his own name, or not operating a collection agency under the management of a layman. However that is not the case sub judice.

The Defendant, Davis Davis, operates a collection agency and call center apparently not operated under the supervision of an attorney. Moreover, all the Plaintiff's interactions with Defendant occurred between Plaintiff and Defendant's non-attorney collection agents employed at the separate collection agency call center. Therefore it is the Plaintiff's position that the Defendant is not exempt from the NCCAA.

Having said that, Defendant has committed several violations of North Carolina collection agency law. Among them, it is a violation of N.C. Gen. § 58-70-110(2) if a debt collector to fails to disclose in its communications with a consumer that the communications are, in fact, attempts to collect a debt. In none of its 65 calls to the Plaintiff did the Defendant disclose that the calls were an attempt to collect a debt or, for that matter, were from a debt collector. Under N.C. Gen. Stat. § 58-70-130(c), the Defendant is liable to the Plaintiff for not less than five-hundred ($500) dollars, nor for more than four-thousand ($4,000) dollars for each violation. The Defendant has committed 65 violations of N.C. Gen. Stat. § 58-70-110(2) and, because of Defendant's open disregard for the law, Plaintiff asks for the maximum statutory amount of four-thousand ($4,000) dollars per violation.

Next, it is a violation of N.C. Gen. Stat. § 58-70-110(1) if the debt collector fails to identify on whose behalf the collection agency is acting or to whom the debt is owed. On one occasion, the Defendant claimed to be acting on behalf of Merrick Bank, i.e., the phone conversation of October 12, 2009. On another occasion, the Defendant claimed to be acting on behalf of Cardworks, i.e., the dunning letter captioned "Cardworks v. Matt Jenkins." In any event, if the Defendant was acting on behalf of Merrick Bank, its subsequent representation that it was acting on behalf of Cardworks was false. On the other hand, if the Defendant was acting on behalf of Cardworks, its earlier statement that it was action on behalf of Merrick Bank was false. Regardless, one of those communications violated N.C. Gen. Stat. § 58-70-110(1). The Plaintiff requests the maximum statutory amount of four-thousand ($4,000) dollars for this violation.

On October 12, 2009, Defendant was asked to stop placing calls to the Plaintiff's cellular phone and leaving prerecorded messages. The Defendant refused,

indicating the calls would continue. North Carolina law forbids a debt collector from placing calls for the purposes of harassing the called party. N.C. Gen. Stat. § 58-70-110(3). The Defendant had already established communication with the Plaintiff, had already communicated its intent to follow up the telephone communication with written correspondence, and had already been asked to stop placing recorded phone calls to Plaintiff's cell phone. There was no reason, *except for purposes of harassment* for Defendant to continue to call Plaintiff's cell phone and leave the same message over and over.

Under N.C. Gen. Stat. § 58-70-130(c), the Defendant is liable to the Plaintiff for not less than five-hundred ($500) dollars, nor for more than four-thousand ($4,000) dollars for each of these violations as well. Plaintiff requests the maximum.

Finally, N.C. Gen. Stat. § 58-70-115 prohibits, generally, the attempted collection any debt by use of unfair practices. Defendant's violations of the TCPA and the FDCPA, as outlined above, are unlawful practices and by their very nature unfair. These cumulative violations form the basis for yet another violation of North Carolina law and another entitlement to statutory relief. The violative acts of the Defendant, when viewed in their entirety, warrant the maximum award of four thousand ($4,000) dollars.

### III.
### CONCLUSION

The allegations in the Complaint have been conclusively established as fact by virtue of the prior entry of default against Defendant. The remaining issue is the amount of damages which should be awarded to Plaintiff.

Defendant placed 65 calls to Plaintiff's cellular phone, knowingly and willfully using a prerecorded message player. Since the recorded messages were left knowingly and willfully, Plaintiff should receive one-thousand five hundred ($1,500) dollars for each of those calls, or ninety seven thousand, five hundred ($97,500) dollars for defendant's violations of the TCPA.

The FDCPA allows for one thousand ($1,000) dollars per action. Plaintiff requests this amount.

The Defendant committed sixty-five (65) separate and distinct violations of N.C. Gen. Stat. § 58-70-110(2) by placing sixty-five (65) calls to Plaintiff, none of which disclosed the fact that the calls were an attempt to collect a debt. Considering the totality of the circumstances, Plaintiff should receive the maximum four-thousand ($4,000) dollars per violation, or two hundred, sixty thousand ($260,000) dollars. At a minimum, Plaintiff, by statute is entitled to thirty-two thousand, five hundred ($32,500) dollars. The Defendant's violation of N.C. Gen. Stat. § 58-70-110(1), by falsely identifying on whose behalf it was collecting, is another separate violation, the maximum award for which is four thousand ($4,000) dollars, the minimum, five hundred ($500) dollars.

Violations of N.C. Gen. Stat. § 58-70-110(3), calls placed for purposes of harassment, are separate violations as well. After October 12, 2009, Defendant placed 16 additional calls, for no other purpose but to harass the Plaintiff. These overtly intentional acts warrant the maximum award of four thousand ($4,000) dollars per violation, or $ 64,000. At a minimum, Plaintiff, by statute, should receive $ 8,000. The general violation of N.C. Gen. Stat. § 58-70-115, Plaintiff's cumulative unlawful conduct warrants an additional award of four thousand ($4,000) dollars for this violation, or at least, five hundred ($500) dollars.

Finally, Plaintiff requests his costs for bringing this action, and because injunctions are authorized under the TCPA (Section 227(b)(3) authorizes a person … to sue for a violation of the TCPA … for statutory damages and an injunction against further violation. *Clean Air Council v. Dragon Int'l Group*, 2006 U.S. Dist. LEXIS 52292 (M.D. Pa. July 28, 2006), Plaintiff requests the Court to enter an Order enjoining Defendant from committing further violations of the TCPA.

Respectfully submitted,

_____  4/15/11
Matt Jenkins
116 Milbros Lane
Mooresville, N.C. 28117
shephard68@yahoo.com
562 882 0300

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was mailed first class, postage prepaid, to the Defendant's attorney addressed as follows:

_____15_____ day of _____April_____, 2011.

Davis Davis Attorneys
393 VANADIUM ROAD SUITE 300
PITTSBURGH PA 15243


_____
Matt Jenkins
116 Milbros Lane
Mooresville, NC 28117